UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| MSP RECOVERY CLAIMS, SERIES LLC, <br> Plaintiff, <br> v. <br> JAZZ PHARMACEUTICALS, PLC, et al., <br> Defendants. | Case No.   5:23-cv-01591-EJD <br><br> **ORDER GRANTING MOTION TO DISMISS** <br><br> Re: Dkt. No. 101 |

Plaintiff, MSP Recovery Claims, Series LLC ("MSP"), brings this class action against Defendants Jazz Pharmaceuticals, PLC, Jazz Pharmaceuticals, Inc., and Jazz Pharmaceuticals Ireland, LTD (collectively, "Jazz"); Express Scripts, Inc., Express Scripts Specialty Distribution Services, Inc., Curascript, Inc., and Priority Healthcare Distribution, Inc., (collectively, "Express Scripts"); Caring Voice Coalition ("CVC"); and Adira Foundation ("Adira") (all together, "Defendants") alleging that Defendants conspired to raise the price and quantity of two pharmaceutical drugs in violation of the Racketeer Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. § 1962, as well as various states' consumer protection and tort laws. First Am. Compl. ("FAC"), ECF No. 97.

Before the Court is Defendants' motion to dismiss MSP's FAC pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6). Mot. to Dismiss ("Mot."), ECF No. 101. MSP filed an opposition, and Defendants filed a reply. Opp'n, ECF No. 104; Reply, ECF No. 106.

Having carefully reviewed the relevant documents, the Court finds this matter suitable for decision without oral argument pursuant to Civil Local Rule 7-1(b). For the reasons stated below,

Case No.: 5:23-cv-01591-EJD
ORDER GRANTING MOTION TO DISMISS

1

the Court **GRANTS** Defendants' motion to dismiss with leave to amend.

## I.  BACKGROUND

The Court previously summarized MSP's allegations in its prior order granting Defendants' first motions to dismiss ("Prior Order"). *See* Order Granting Mots. to Dismiss ("Prior Order"), ECF No. 96. These allegations remain largely unchanged and need not be repeated here. The Court will therefore only discuss the facts relevant to the present analysis.

### A.  Factual Background

This case arises out of Defendants' alleged conspiratorial kickback scheme to circumvent congressionally mandated co-payments and increase the unit price and quantity of two prescription drugs manufactured by Jazz: Xyrem and Prialt ("Subject Drugs"). FAC ¶¶ 1, 3–4. MSP essentially alleges that Jazz donated money to CVC to be used almost exclusively to help patients pay their co-payments for the Subject Drugs. *Id.* ¶¶ 4, 39. As a result, patients were able to purchase the Subject Drugs for free. *Id.* ¶¶ 10, 72. Because more patients could now afford the Subject Drugs, more patients placed orders for the Subject Drugs through their health care insurance providers, and Jazz's profits increased accordingly. *See id.* ¶¶ 14, 15, 246, 511. As demand for the Subject Drugs increased, MSP alleges that Jazz also raised their prices exponentially. *Id.* In the end, Jazz allegedly acquired unlawfully obtained profits from artificially inflated purchases and supra-competitive pricing. *Id.* ¶ 4. MSP also alleges that Jazz paid pharmacies, including Express Scripts, to refer patients to CVC. *Id.* ¶ 6. Upon receiving co-pay assistance from CVC, these pharmacies would generate and submit claims for payment directly to Medicare and Medicaid health plans. *Id.* According to MSP, this scheme injured the Medicare and Medicaid health care insurance providers who had to pay for the Subject Drugs at artificially inflated rates and supra-competitive pricing. *See id.* ¶ 16.

MSP brings this action on behalf of the following seven Medicare and Medicaid health insurance coverage companies ("Assignors") who paid out claims for the Subject Drugs during the period of allegedly unlawful conduct: (1) AvMed, Inc., ("AvMed"), assigned claims to MSP on June 19, 2019, *id.* ¶ 77; (2) SummaCare, Inc., ("SummaCare"), assigned claims to MSP on May

Case No.: 5:23-cv-01591-EJD
ORDER GRANTING MOTION TO DISMISS

2

12, 2017. *id.* ¶ 81; (3) Network Health, Inc., ("NHPN"), assigned claims to MSP on August 9, 2017, *id.* ¶ 88; (4) Health Alliance Medical Plans, Inc., ("HEAL"), assigned claims to MSP on March 19, 2019, *id.* ¶ 97; (5) Fallon Community Health ("FCHP"), assigned claims to MSP on June 19, 2017, *id.* ¶ 104; (6) Group Health Incorporated and Health Insurance Plan of Greater New York ("EHTH"), assigned claims to MSP on March 20, 2018, *id.* ¶ 108; and (7) ConnectiCare, Inc., ("CONC"), assigned claims to MSP on March 20, 2018, *id.* ¶ 114.

### B. Procedural History

MSP originally filed this action on April 3, 2023, on behalf of one named Assignor, SummaCare, and an unknown amount of unnamed assignors, claiming $700,000 in damages acquired from "at least" January 1, 2011, through April 3, 2023. *See* Compl., ECF No. 1.

On December 12, 2023, the Court granted Defendants' motions to dismiss. *See* Prior Order. The Court held that MSP could not brings claims on behalf of unnamed assignors, and MSP failed to establish that the one named assignor, SummaCare, suffered an injury-in-fact. *Id.* Specifically, the Court found that MSP failed to plead facts sufficient to show "when SummaCare experienced an injury, what injury SummaCare experienced during the relevant period of allegedly unlawful conduct, and to whom SummaCare paid the $700,000 that serves as the basis of its injury." Prior Order 8. The Court granted leave to amend. *Id.*

MSP filed the FAC on January 5, 2024. *See* FAC. The factual allegations remain largely unchanged, but MSP added six new Assignors and now alleges damages of $3,000,000 incurred from January 1, 2011, through 2020. *Id.* ¶ 69. Defendants filed a joint motion to dismiss the FAC on February 20, 2024. *See* Mot.

## II. LEGAL STANDARD

### A. Rule 12(b)(1)

A district court must dismiss an action if it lacks jurisdiction over the subject matter of the suit. Fed. Rules Civ. Pro. 12(b)(1). Once a defendant moves to dismiss for lack of subject matter jurisdiction, the plaintiff has the burden of establishing the court's jurisdiction. *Chandler v. State Farm Fut. Auto. Ins. Co.*, 598 F.3d 1115, 1122 (9th Cir. 2010).

Case No.: 5:23-cv-01591-EJD
ORDER GRANTING MOTION TO DISMISS

3

**B.    Rule 12(b)(6)**

A complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). A defendant may move to dismiss a complaint for failing to state a claim upon which relief can be granted under Rule 12(b)(6). When deciding whether to grant a motion to dismiss under Rule 12(b)(6), the court must generally accept as true all "well-pleaded factual allegations." *Ashcroft v. Iqbal*, 556 U.S. 662, 664 (2009). While a plaintiff need not offer detailed factual allegations to meet this standard, she is required to offer "sufficient factual matter . . . 'to state a claim to relief that is plausible on its face.'" *Id.* at 678 (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). The court must construe the alleged facts in the light most favorable to the plaintiff. *See Retail Prop. Trust v. United Bd. of Carpenters & Joiners of Am.*, 768 F.3d 938, 945 (9th Cir. 2014) ("[The court] must accept as true all factual allegations in the complaint and draw all reasonable inferences in favor of the nonmoving party."). However, "courts are not bound to accept as true a legal conclusion couched as a factual allegation." *Iqbal*, 556 U.S. at 678.

Claims sounding in fraud must also meet the heightened pleading requirements of Federal Rule of Civil Procedure 9(b). *See Vess v. Ciba-Geigy Corp. USA*, 317 F.3d 1097, 1102–03 (9th Cir. 2003). Under Rule 9(b), a party "must state with particularity the circumstances constituting fraud." Fed. R. Civ. P. 9(b).

If the court concludes that a 12(b)(6) motion should be granted, the "court should grant leave to amend even if no request to amend the pleading was made, unless it determines that the pleading could not possibly be cured by the allegation of other facts." *Lopez v. Smith*, 203 F.3d 1122, 1127 (9th Cir. 2000) (en banc) (quotation omitted).

**III.   DISCUSSION**

**A.    Judicial Notice**

As an initial matter, Defendants filed an opposed request for judicial notice. Req. for Judicial Notice, ECF No. 102; Opp'n to Req. for Judicial Notice, ECF No. 105; Reply in Supp. of Request for Judicial Notice, ECF No. 107.

Case No.: 5:23-cv-01591-EJD
ORDER GRANTING MOTION TO DISMISS
4

"In evaluating a Rule 12(b)(6) motion, the district court is limited to the allegations of the complaint, documents incorporated into the complaint by reference, and matters which are subject to judicial notice." *MLW Media LLC v. World Wrestling Ent., Inc.*, No. 22-CV-00179-EJD, 2023 WL 4053802, at *2 (N.D. Cal. June 15, 2023); *see also Louisiana Mun. Police Emps.' Ret. Sys. v. Wynn*, 829 F.3d 1048, 1063 (9th Cir. 2016) (citing *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322 (2007)). A court may take judicial notice of a fact "not subject to reasonable dispute" if it is "generally known within the trial court's territorial jurisdiction" or "can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned." Fed. R. Evid. 201(b). However, the Ninth Circuit prohibits taking judicial notice of facts in documents that are being used as a basis to resolve genuine factual disputes in a complaint, warning that the "overuse and improper application of judicial notice and the incorporation-by-reference doctrine . . . can lead to unintended and harmful results." *Khoja v. Orexigen Therapeutics, Inc.*, 899 F.3d 988, 998–99 (9th Cir. 2018).

Here, Defendants request that the Court take judicial notice of three documents: (1) a redline comparison of the FAC with the original complaint; (2) a court filing involving both parties to this case; and (3) Jazz's formal SEC filings. Req. for Judicial Notice.

First, the Court finds it unnecessary to take judicial notice of Defendants' redline comparisons between the original complaint and the FAC.[1] *See* Req. for Judicial Notice, Ex. A, ECF No. 102-1. The Court relies on its own assessment of the differences between the complaints when necessary to determine whether the FAC cures the deficiencies in the prior complaint.

Second, the Court takes judicial notice of MSP's September 19, 2018, "bill of discovery," which MSP filed against Jazz in a Florida state court on behalf of numerous assignors. *See* Req. for Judicial Notice, Ex. B, ECF No. 102-2. This document is relevant to Defendants' statute of

---

[1] The Court notes that MSP violated the Court's Standing Order by failing to attach its own redline to the FAC. Standing Order 1 ("All amended complaints shall attach as an exhibit a red-line document showing the changes made to the previously filed complaint."). MSP is cautioned to adhere to the Standing Order moving forward, as well as all local and federal rules of civil procedure.

Case No.: 5:23-cv-01591-EJD
ORDER GRANTING MOTION TO DISMISS
5

limitation arguments, and it is a publicly available document whose authenticity "is not subject to reasonable dispute." Fed. R. Evid. 201(b); *see also, e.g., In re Qualcomm Antitrust Litig.*, 292 F. Supp. 3d 948, 964 (N.D. Cal. 2017). However, the Court will not take judicial notice of the veracity of facts contained therein that are subject to reasonable dispute. *See Khoja*, 899 F.3d at 998–99.

Third, the Court takes judicial notice of Jazz's SEC filings. *See* Req. for Judicial Notice, Ex. C, ECF No. 102-3. This is also a public document whose authenticity "is not subject to reasonable dispute," Fed. R. Evid. 201(b), and "[i]t is well-established that courts may take judicial notice of SEC filings." *In re New Century*, 588 F. Supp. 2d 1206, 1219 (C.D. Cal. 2008). However, again here, the Court does not take judicial notice of the veracity of facts contained therein that are subject to reasonable dispute. *See Khoja*, 899 F.3d at 998–99.

### B. Standing

Moving to the substance of Defendants' motion to dismiss, the Court finds that MSP failed to cure the Article III standing deficiencies identified in the Court's Prior Order. Specifically, the FAC (1) continues to impermissibly plead claims on behalf of unnamed assignors, and (2) failed to include new facts sufficient to establish an injury-in-fact for the named Assignors.

#### 1. Unnamed Assignors

Despite the Court's finding that MSP is required to specifically name and independently establish standing for all its assignors, the FAC references the newly named Assignors as "exemplar" or "representative" assignors, signaling that MSP once again brings claims on behalf of other unnamed assignors. *See, e.g.,* FAC ¶¶ 69, 71, 76. The Court reiterates that MSP may not bring claims on behalf of unnamed assignors. *See MAO-MSO Recovery II, LLC v. Mercury Gen.*, No. 21-56395, 2023 WL 1793469, at *2 (9th Cir. Feb. 7, 2023) ("Standing is not dispensed in gross; instead, a plaintiff must demonstrate standing for each claim he seeks to press and for each form of relief that is sought.") (internal quotations omitted) (quoting *Davis v. Fed. Election Comm'n*, 554 U.S. 724, 734 (2008)); *see also MSP Recovery Claims, Series LLC v. Actelion Pharms. US, Inc.*, No. 22-CV-07604-JSC, 2023 WL 5725517, at *8 (N.D. Cal. Sept. 5, 2023)

Case No.: 5:23-cv-01591-EJD
ORDER GRANTING MOTION TO DISMISS

6

(declining to find standing for MSP's unnamed assignors). Accordingly, all claims brought on behalf of unnamed assignors are once again **DISMISSED** with prejudice.

### 2. Named Assignors

Moving to the facts specific to the named Assignors, the Court previously advised MSP that it must, at a minimum, allege facts to show when the Assignors experienced an injury, what injury the Assignors experienced during the relevant period of allegedly unlawful conduct, and to whom Assignors paid the money that serves as the basis of their injuries. Prior Order 8. While the FAC cured some of these deficiencies, MSP still failed to plead facts sufficient to establish standing.

On the one hand, the FAC successfully alleged new facts to show when the Assignors experienced their alleged injury and to whom the Assignors paid their claims. The FAC now alleges that AvMed paid Xyrem claims to Express Scripts for two patients in Florida in 2014, 2017, and 2018, FAC ¶ 80; SummaCare paid Xyrem claims to Express Scripts for three patients in Nevada and Ohio in 2011, 2013, 2014, 2019, and 2020, *id.* ¶¶ 86, 87; NHPN paid Xyrem claims to Express Scripts for three patients in Wisconsin and Arizona in 2011, 2012, 2013, 2014, 2015, 2016, and 2017, *id.* ¶¶ 93–96; HEAL paid Xyrem claims to Express Scripts for two patients in Illinois in 2015, 2016, 2017, and 2018, *id.* ¶ 103; FCHP paid Xyrem claims to Express Scripts for one patient in Massachusetts in 2013, *id.* ¶ 107; EHTH paid Xyrem claims to Express Scripts for one patient in New York in 2012, *id.* ¶ 113; and CONC paid Xyrem claims to Express Scripts for three patients in Connecticut and Hawaii in 2014 and 2015, *id.* ¶¶ 119, 120.

However, the FAC still failed to plead facts sufficient to show what injury each individual Assignor suffered. A blanket claim to $3,000,000 on behalf of seven individual Assignors' purchases of two different drugs across ten states[2] over the course of nearly a decade is insufficient to answer this question for at least four reasons.

First, there are no facts to suggest that any Assignor paid a single claim for the drug Prialt,

---

[2] The Court also notes that there are no facts to support MSP's allegations that any purchases or other conduct occurred in California.

Case No.: 5:23-cv-01591-EJD
ORDER GRANTING MOTION TO DISMISS

7

1  yet the FAC includes Prialt in its definition of the "Subject Drugs" and dedicates over thirty

2  paragraphs to describing Defendants' alleged conspiracy to artificially raise the price and quantity

3  of Prialt. *See, e.g., id.* ¶¶ 241–46, 256.b., 325–26, 333–34. Defendants highlighted this deficiency

4  in their motion, and MSP failed to provide any explanation except to say, without citing specific

5  facts in the FAC, that each Assignor paid claims for Jazz's drugs, "i.e.," Xyrem and Prialt. Opp'n

6  4. Not only does this response fail to address Defendants' arguments, but the new characterization

7  of the facts—that Xyrem and Prialt are "examples" of the drugs purchased by Assignors—raises

8  another issue for the Court, as it suggests that MSP's $3,000,000 injury includes purchases of

9  drugs other than just Xyrem and Prialt

10  Second, the FAC oscillates between theories of recovery, characterizing the $3,000,000 as

11  simultaneously representing reimbursement for the "supra-competitive price," the "artificially

12  inflated quantities" of the Subject Drugs, and the "tainted" claims. *See, e.g., id.* ¶ 1. In other

13  words, it is unclear whether the $3,000,000 represents the increase in price, increase in quantity, or

14  all money paid for the Subject Drugs under the theory that every dollar was tainted by the scheme.

15  Third, there are no facts to even infer what portion of the $3,000,000 each individual

16  Assignor paid out in claims. The Court repeats, "standing is not dispensed in gross." *MAO-MSO*

17  *Recovery II, LLC v. Mercury Gen.*, No. 21-56395, 2023 WL 1793469, at *2. MSP must present

18  facts sufficient to establish injury-in-fact as to each individual Assignor.

19  Fourth, there are no facts, or even arguments in the opposition, explaining why the factual

20  allegations remain largely unchanged, yet the period of injuries decreased by three years, from

21  2011–2023 to 2011–2020, and the amount of damages increased from $700,000 to $3,000,000.

22  *Compare* Compl. ¶ 68, *with* FAC ¶ 69.

23  Therefore, the Court **GRANTS** Defendants' motion to dismiss with leave to amend. The

24  Court will afford MSP another opportunity to cure these deficiencies in an amended complaint, as

25  it has not yet determined "that the pleading could not possibly be cured by the allegation of other

26  facts." *Lopez*, 203 F.3d at 1127.

27

28  Case No.: 5:23-cv-01591-EJD
ORDER GRANTING MOTION TO DISMISS

8

### C. Additional Issues

Because MSP failed to cure the standing deficiencies identified in the Prior Order, the Court does not reach any conclusion regarding Defendants' many remaining arguments. However, the Court will briefly address two additional threshold issues for the benefit of tailoring any future briefings should MSP choose to file an amended complaint.

#### 1. Assignable Claims

If MSP can sufficiently plead injury-in-fact, MSP must also establish that its claims are assignable. *See Spinedex Physical Therapy USA Inc. v. United Healthcare of Ariz., Inc.*, 770 F.3d 1282, 1291 (9th Cir. 2014). The Parties heavily debate the assignability of federal RICO claims.

The Ninth Circuit has not ruled on whether RICO claims are assignable. However, in *Silvers v. Sony Pictures Ent., Inc.*, the Ninth Circuit analyzed the assignability of claims brought under the Copyright Act and found that an assignee who holds an accrued copyright infringement claim without any legal or beneficial interest in the copyright itself cannot institute an action for infringement. 402 F.3d 881 (9th Cir. 2005) (en banc). The court reasoned that copyright "is a creature of statute," whereby "the only rights that exist under copyright law are those granted by statute." *Id.* at 883–84. Using "traditional principles of statutory interpretation," the Court found that "Congress' explicit listing of who *may* sue for copyright infringement should be understood as an *exclusion of others* from suing for infringement." *Id.* at 885 (emphasis in original). Therefore, because the Copyright Act only grants the right of private action to "the legal or beneficial owner of an exclusive right under a copyright," the Ninth Circuit found that assignors who are not the legal or beneficial owners of the copyright are excluded from initiating an action. *Id.* at 884.

After the Court took the present motion under submission, two district courts in the Central and Northern Districts of California addressed the applicability of *Silvers* to RICO claims in other similar actions brought by MSP. In the Central District, the court "d[id] not find, at this point, that RICO claims are unassignable." *MSP Recovery Claims, Series LLC v. Onyx Pharmaceuticals, Inc., et al.*, No. 2:23-CV-03130-MEMF-PD, 2024 WL 3464410, at *9 (C.D. Cal. July 15, 2024).

Case No.: 5:23-cv-01591-EJD
ORDER GRANTING MOTION TO DISMISS

9

1  Although RICO defines who may initiate an action, the court did not interpret *Silvers* as holding

2  that any private right of action conferred by federal statute is unassignable unless otherwise

3  expressly noted. *Id.* The court noted that "the Ninth Circuit has upheld the assignment of claims

4  provided by federal statute in other contexts," i.e., the Employee Retirement Income Security Act

5  of 1974 ("ERISA"). *Id.*

6  In contrast, in the Northern District, the court found that RICO claims are not assignable.

7  *MSP Recovery Claims, Series LLC, et al. v. Actelion Pharmaceuticals US, Inc., et al.*, No. 3:22-

8  CV-07604-JSC, 2024 WL 3408221 (N.D. Cal. July 12, 2024). While recognizing that numerous

9  other courts have found RICO claims assignable, the court observed that many of these cases

10 assume the availability of assignment under RICO without analyzing how or why the assignment

11 exists. *See id.*, at *16 (collecting cases). Upon a closer look at RICO's statutory language and the

12 Ninth Circuit's analysis in *Silvers*, the court found that, similar to the Copyright Act, RICO's

13 private right of action is a creature of statute, and the statute allows only those injured in business

14 or property to sue under RICO. *Id.*, at *13. The court also noted that ERISA claims are only

15 assignable because the Ninth Circuit found that "permitting health care providers to sue in place of

16 the beneficiaries they had treated was consistent with Congressional intent in enacting ERISA,"

17 *not* because the Ninth Circuit "believed that federal common law on derivative standing trumps

18 the plain language of Section 502." *Id.*, at *17 (internal quotation marks omitted) (quoting *Simon

19 v. Value Behav. Health, Inc.*, 208 F.3d 1073, 1081 (9th Cir. 2000), *amended*, 234 F.3d 428 (9th

20 Cir. 2000), *and overruled on other grounds by Odom v. Microsoft Corp.*, 486 F.3d 541 (9th Cir.

21 2007)).

22 The Court finds the analysis from *Actelion* persuasive at this time. The Ninth Circuit held

23 that "Congress' explicit listing of who *may* sue [] should be understood as an *exclusion of others*,"

24 and RICO clearly defines those who may initiate an action as "[a]ny person injured in his business

25 or property by reason of a violation" of RICO. 18 U.S.C. § 1964(c). Thus, pursuant to *Silvers*, the

26 Court is inclined to find that assignees such as MSP, who were not injured in their business or

27 property by a RICO violation, cannot initiate an action under RICO.

28 Case No.: 5:23-cv-01591-EJD
ORDER GRANTING MOTION TO DISMISS

10

1     Should the Parties dispute RICO claim assignments again in any future briefing, the Court

2     will provide the Parties the opportunity to respond to the assignability analyses from *Onyx* and

3     *Actelion* discussed in this section.

### D. Statutes of Limitation

The Parties also dispute whether the various statutes of limitation preclude MSP's claims. Central to this dispute is the question of when the injuries underlying MSP's claims were "discovered" for purposes of the statutes of limitation. The Parties focus their arguments on the statute of limitation for MSP's RICO claim.

The Ninth Circuit follows the "injury discovery" statute of limitation rule for civil RICO claims, whereby "[t]he plaintiff is deemed to have had constructive knowledge if it had enough information to warrant an investigation which, if reasonably diligent, would have led to discovery of the fraud." *Pincay v. Andrews*, 238 F.3d 1106, 1109–10 (9th Cir. 2001) (internal quotation marks omitted) (quoting *Beneficial Standard Life Ins. Co. v. Madariaga*, 851 F.2d 271, 275 (9th Cir. 1988)).

Here, in 2018, MSP filed a "bill of discovery" against Jazz in a Florida state court seeking information about Jazz's "copay charity donation system." Req. for Judicial Notice, Ex. B, *MSP Recovery Claims, Series LLC, et al. v. Jazz Pharmaceuticals, Inc.*, Case No. 2018-031819-CA-31 (Fla. 11th DCA Sept. 19, 2018), at 1, ECF No. 102-2. Many of the facts alleged in the Florida case were similarly alleged here. For instance, the Florida complaint alleges that "Jazz made donations to charitable organizations and used them as a conduit to pay the copay obligations of Plaintiffs' Assignors' Enrollees taking the Subject Drugs," *id.* ¶ 54, referring to CVC as the charitable organization, *see id.* ¶ 58. This allegation mirrors MSP's allegation in the FAC, that "Jazz made donations to CVC and used CVC as a conduit to pay the copay obligations of Medicare patients taking the Subject Drugs." FAC ¶ 256.a.

MSP argues that the Florida case merely sought information; MSP did not have knowledge of the facts underlying this action at the time it filed the bill of discovery. Opp'n 12. However, MSP has not identified any material facts in the FAC that were absent from the Florida filing. The

Case No.: 5:23-cv-01591-EJD
ORDER GRANTING MOTION TO DISMISS

11

1   Court is therefore inclined to find that MSP at the very least had inquiry notice of the basic

2   scheme underlying this action as recently as September 2018—indeed, the purpose of the Florida

3   case was to inquire into the facts ultimately underlying the claims here.

4   However, the statute of limitation inquiry does not examine what MSP knew and when;

5   the question is generally what the *Assignors* knew and when. *See, e.g., Aerofund Fin., Inc. v.*

6   *Elliott*, 11 F. App'x 792, 794 (9th Cir. 2001) (stating that the assignee stands in the shoes of the

7   assignor); *In re Countrywide Fin. Corp. Mortg.-Backed Sec. Litig.*, No. 2:11-ML-02265-MRP,

8   2014 WL 3529677, at *5 (C.D. Cal. July 14, 2014) (analyzing the residency of the assignor, not

9   the assignee, to determine where the cause of action accrued and citing cases). It reasons that

10  MSP imparted its knowledge of the facts underlying these claims on the Assignors who assigned

11  their claims prior to the September 2018 Florida case—that is, SummaCare, NHPN, FCHP,

12  EHTH, and CONC. As to the Assignors who were not in contract with MSP at that time—HEAL

13  and AvMed—the Court would be inclined to find that MSP imparted its knowledge to them when

14  they assigned their claims to MSP in 2019.

15  Should the Parties dispute the statutes of limitation again in any future briefing, the Court

16  directs the Parties to discuss each claim's statute of limitation for each Assignor in accordance

17  with the Court's observations in this section.

## IV. CONCLUSION

19  Based on the foregoing, the Court **GRANTS** Defendants' motion to dismiss with leave to

20  amend. MSP may file an amended complaint by **August 12, 2024**.

21  **IT IS SO ORDERED.**

22  Dated: July 22, 2024

EDWARD J. DAVILA
United States District Judge

Case No.: 5:23-cv-01591-EJD
ORDER GRANTING MOTION TO DISMISS
12